ANTON HANDAL (Bar No. 113812)
anh@handal-law.com
GABRIEL HEDRICK (Bar No. 220649)
ghedrick@handal-law.com
LAUREN KANE (Bar No. 286212)
lkane@handal-law.com
HANDAL & ASSOCIATES
750 B Street, Suite 2510
San Diego, California 92101
Tel: 619.544.6400
Fax: 619.696.0323
Attorneys for Plaintiff
e.Digital Corporation

Attorneys for Plaintiff
E.DIGITAL CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| E.DIGITAL CORPORATION, | Case No. 3:15-cv-00056-BEN-DHB |
|---|---|
| Plaintiff, | **PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF (PATENT L.R. 4.4.a.)** |
| v. | |
| ARCSOFT, INC., DBA AS CLOSELI AND AS SIMPLICAM, | Judge:  Hon. Judge Roger T. Benitez Ctrm: 5A (5th Floor – Schwartz) |
| Defendant. | Hearing: January 21, 2016 Time:   9:30 a.m. |

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-i-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 15-cv-00056-BEN-DHB

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................1

II.   PROCEDURAL HISTORY ...............................................................2

III.  LEGAL STANDARD ........................................................................3

IV.   AGREED UPON CONSTRUCTIONS ...........................................5

V.    CONSTRUCTION OF DISPUTED CLAIM TERMS ....................6

       A.   "social signature" ...................................................................6

       B.   "social template" .....................................................................9

       C.   "social hierarchy" .................................................................11

       D.   "first detected sensor value"/"second detected sensor value" ..............13

VI.   CONCLUSION................................................................................17

**HANDAL & ASSOCIATES**
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 15-cv-00056-BEN-DHB

# TABLE OF AUTHORITIES

**CASES**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) ...................................................................................................4

*Comark Communs. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).........3, 4

*Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012)...................4

*Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1373 (Fed. Cir. 2001)...................................................................................................5

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004) ...................................................................................................3

*Liebel Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) .............4

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995 .........3, 4

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) ........................3, 4, 5

*Polycom, Inc. v. Codian Ltd.*, 2007 U.S. Dist. LEXIS 97892, *93-94 (E.D. Tex. 2007).................................................................................................15, 17

*Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012) .................................................................................................................3

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)....3, 4, 5

**RULES**

Local Patent Rule 4.4.a...........................................................................................1

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-iii-

Pursuant to Local Patent Rule 4.4.a. and the Court's June 29, 2015 Scheduling Order ("Scheduling Order") (Doc. No. 32), Plaintiff e.Digital Corporation ("Plaintiff" or "e.Digital") submits the following Opening Claim Construction Brief in the above-entitled matter.

## I.    INTRODUCTION

Plaintiff, e.Digital, is the sole owner of U.S. Patent Nos. 8,306,514 ("the '514 patent"); 8,311,522 ("the '522 patent"); 8,311,523 ("the '523 patent"); 8,311,524 ("the '524 patent"); and 8,315,619 ("the '619 patent"), which e.Digital refers to, in combination with other patents not asserted here, as the "Nunchi" patents (collectively, the "Asserted Patents" or "Nunchi Patents"). (Exhibits A–E.) e.Digital owns three other patents in this portfolio, which are not asserted here, two of which were granted after this case was filed. (*See* Exhibits F-H hereto.)

The application for the '522 patent was filed on September 28, 2010 and was the first of all of the Asserted Patents to be filed. (*Id.*) Thereafter, the applications of each of the remaining Asserted Patents were filed and each is a continuation of the '522 patent.[1]    Accordingly, aside from the "Cross-Reference to Related Application" contained in each of the Continuation Patents that refer back to the '522 patent, the disclosures contained in the specifications of each of the Asserted Patents are identical.[2]

Against Defendant ArcSoft, Inc. ("ArcSoft" or "Defendant"), e.Digital

---

[1] The '522 patent is hereafter occasionally referred to as the "parent '522 patent." The '514, '523, '524, and '619 patents (as well as other relevant continuations cited herein) are hereinafter occasionally referred to collectively as the "Continuation Patents."

[2] Because the specification of each of the Asserted Patents contains word-for-word identical disclosures, for the sake of brevity and efficiency, Plaintiff cites specifically herein to the specification of the parent '522 patent.    However, Plaintiff represents and hereby notifies the Court and Defendant that Plaintiff relies on the exact same disclosures contained in the Continuation Patents.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 15-cv-00056-BEN-DHB

asserts claims 1, 3, 6, 17, and 21-25 of the '522 patent; claims 1, 3, 5, 6, 14, 16, 30, and 33 of the '514 patent; claims 1, 3, 8, 10, 19, 23, and 26 of the '523 patent; claims 1 and 7 of the '524 patent; and claims 1, 3, 8, 19, 23, and 32 of the '619 patent. The accused products include, but are not limited to Defendant's "simplicam"-branded wireless camera systems, which include, without limitation, Defendant's "Closeli" subscription recording services and server for remote monitoring and communication.

## II.    PROCEDURAL HISTORY

e.Digital filed suit against ArcSoft on January 12, 2015 in the Southern District of California.  (Doc. No. 1.)  ArcSoft answered on March 5, 2015.  (Doc. No. 12.)

Pursuant to the Court's June 29, 2015 Scheduling Order, the parties exchanged their proposed terms for construction and exchanged their preliminary claim constructions and identification of intrinsic and extrinsic evidence. Thereafter, the parties met and conferred to narrow the number of terms for the Court to construe.   On October 26, 2015, the parties filed their Joint Claim Construction and Pre-Hearing Statement, Joint Claim Construction Chart, and Joint Claim Construction Worksheet.  (Doc. Nos. 42-44.)

On December 1, 2015, the District Court in *e.Digital v. Dropcam*, Northern District of California, Case No. 3:14-cv-04922-JST (hereinafter referred to as "*Dropcam*"), entered a claim construction order.  (*See* Exhibit I hereto.)  *Dropcam* concerns the very same patents at issue in this case.   The Court's claim construction order in *Dropcam* addresses 8 of the 10 disputed claim terms at issue in this proceeding, though the construction of 2 of those 8 terms were agreed upon in *Dropcam*.  (*Id.*)   At e.Digital's request, the Parties met and conferred on December 2 and December 3, 2015 to discuss a possible narrowing of issues for this Court to consider in light of the *Dropcam* claim construction order.   The Parties were able to agree on several claim constructions as set forth below and in

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 15-cv-00056-BEN-DHB

the Parties' Amendment to Joint Hearing Statement filed December 4, 2015 (Doc. No. 45).

## III.   LEGAL STANDARD

Claim construction is an issue of law to be determined by the Court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).  "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).

Claim terms are generally given their ordinary and customary meaning. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  In patent law, the ordinary and customary meaning of a claim term is the meaning that the term would have to a person having ordinary skill in the art at the time of the invention.  *Phillips*, 415 F.3d at 1313.  Claim construction may deviate from the ordinary and customary meaning of a disputed term only if (1) a patentee sets out a definition and acts as his own lexicographer, or (2) the patentee disavows the full scope of a claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips, 415 F.3d at 1312* (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Thus, in determining the proper construction of a claim, a court should first look to the language of the claims.  *See Vitronics*, 90 F.3d at 1582; *see also Comark Communs. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).  The context in which a disputed term is used in the asserted claim may provide substantial guidance as to the meaning of the term.  *See Phillips*, 415 F.3d at 1314.

In determining the meaning of a term, the person of ordinary skill in the art

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-3-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 15-cv-00056-BEN-DHB

is deemed "to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*   This test provides an objective baseline from which to begin claim interpretation. *Id.*   In some cases, the ordinary meaning of a disputed term to a person of skill in the art is readily apparent, and claim construction involves "little more than the application of the widely accepted meaning of commonly understood words." *Id. at 1314.*

Usually, the specification "is the single best guide to the meaning of a disputed term." *Vitronics,* 90 F.3d at 1582.   It is therefore "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of claims." *Phillips*, 415 F.3d at 1315. However, "[t]he written description part of the specification does not delimit the right to exclude. That is the function and purpose of claims." *Markman*, 52 F.3d at 980; *Comark*, 156 F.3d at 1186.   Thus, in construing the terms of a claim, even though claim terms are "understood in light of the specification, a claim construction must not import limitations from the specification into the claims." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012).   Moreover, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).   Conversely, "a claim construction that excludes the preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) (citations omitted).

Finally, courts may consider extrinsic evidence in construing claims, such as "expert and inventor testimony, dictionaries, and learned treatises." *Markman,* 52 F.3d at 980.   Expert testimony may be useful to "provide background on the

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-4-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*   Case No. 15-cv-00056-BEN-DHB

technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips,* 415 F.3d at 1318.   However, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* Further, "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Id.* at 1321. Thus, a court should not rely on extrinsic evidence in construing claims to contradict the meaning of claims discernable from examination of the claims, the written description, and the prosecution history. *See Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1373 (Fed. Cir. 2001); *Vitronics,* 90 F.3d at 1583. If intrinsic evidence mandates the definition of a term that is at odds with extrinsic evidence, courts must defer to the definition supplied by the former. *Dow Chem Co.* at 1373.

## IV.   AGREED UPON CONSTRUCTIONS

The Parties have agreed to the following constructions for each of the claim terms and phrases listed below.

| Claim Term or Phrase | Agreed Upon Construction |
|---|---|
| "information" | Plain and ordinary meaning |
| "provide/provides/ providing differing levels of information" | Plain and ordinary meaning |
| "provide/provides/ providing an update" | Plain and ordinary meaning |
| "sensor value range" | "range of measurements between two values" |

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*            Case No. 15-cv-00056-BEN-DHB

1    The Parties have also withdrawn their request for a separate construction for

2  "unique social signature" and agree that construction of just the term "social

3  signature" will be sufficient.   e.Digital therefore respectfully requests that the

4  Court adopt the constructions agreed to by the Parties.

5  **V.    CONSTRUCTION OF DISPUTED CLAIM TERMS**

6    The Parties dispute the proper construction of five separate claim terms and

7  phrases.   e.Digital respectfully urges the Court to adopt its constructions for the

8  reasons set forth below.

9    **A.    "social signature"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "data and/or other information based on sensors" | "combination of processed sensor data indicative of a type of activity" |

14    Plaintiff respectfully requests that the term "social signature" be construed

15  as "data and/or other information based on sensors."  The intrinsic evidence amply

16  supports Plaintiff's proposed construction.  Defendant's proposed construction, on

17  the other hand, is unduly limiting to the extent it requires a "combination" of

18  sensor data and to the extent it requires the data to be "indicative of a type of

19  activity."

20    The specifications of each of the patents explain that one or more

21  processor(s) of the invention "receives sensor data related to an environment of a

22  communication device, creates a detected social signature from the received sensor

23  data, [and] determines which of the social signatures of the social templates has the

24  greatest correspondence with the created social signature."  (Ex. A ('522 patent) at

25  Abstract.)  The terms "detected social signature," "created social signature" and

26  "constructed social signature" are used interchangeably throughout the patents and

27  refer to the data that is derived from or based on the sensors and formatted for use

28  by the system of the invention.  (*See*, *e.g.*, *id.* at 1:48-58; 2:5-19; 2:66-3:3; 3:19-23;

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-6-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                     Case No. 15-cv-00056-BEN-DHB

1    3:48-60; 4:14-18; 4:65-5:2; 5:19-32; 5:60-6:3; 6:19-24; 7:4-8; 7:13-37; 7:54-65;

2    9:5-11:6-14:34; 15:29-42; 17:51-18:18; 18:44-18:62; 19:11-20; Fig. 3.)

3         ArcSoft's construction improperly limits the social signature to a

4    "combination" of sensor data.  Such a limiting construction is not supported by the

5    specification or the claims within the patent family.  Although independent claim 1

6    of the '522 patent and other claims teach a social signature comprised of a "first

7    detected sensor value" and a "second detected sensor value," other claims within

8    the same patent family do not require a combination of sensor data.  For example,

9    claim 1 of the '331 patent, which shares the same specification as the asserted

10   patents, discloses "A method for transmitting data comprising: [¶] generating

11   sensor data … [¶] creating a social signature based on the generated sensor data."

12   (Ex. G ('331 patent) at claim 1.)  The claim does not specify the number of sensors

13   or sensor data measurements required.  It does not prohibit just a single sensor data

14   measurement.    Requiring a combination of sensor data would therefore be

15   inconsistent with at least claim 1 of the '331 patent.

16        Similarly, claim 1 of the '983 patent, which is not asserted here, shares the

17   exact same specification of the asserted patents, but specifically discloses: "a

18   communication device having **at least one sensor** for generating sensor data

19   representing a characteristic of the user's activity in the environment of the

20   communication device."  (Ex. H ('983 patent) at claim 1.)[3]  The claim further

21   teaches "calculating logic comprising code to: create a social signature based on

22   the sensor data."  (*Id.*)  The claim does not require a "combination" of sensor data

23   and, given that the claim could cover just one sensor, it is reasonable to conclude

24   that the social signature could be comprised of just one sensor measurement.  The

25   claim is therefore squarely at odds with ArcSoft's proposed construction.

26

27        [3] The '983 patent was granted three months after the claim construction

28   hearing in *Dropcam* and so was not before the Court in that case.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-7-

1    To the extent ArcSoft may argue that any of the claims asserted in the

2  present case require a combination of sensor data, ArcSoft is free to point to those

3  specific claim limitations that support its position, but they should not be permitted

4  to incorporate those limitations into the construction of the broader term "social

5  signature."   To do so would unduly limit the claims in the greater patent family

6  that do not require such a combination.

7    Finally, ArcSoft seeks to include the phrase "indicative of a type of activity"

8  in its proposed construction of "social signature."   This construction reveals

9  ArcSoft's fundamental lack of understanding of the different components of the

10  systems of the Nunchi patents.   The same limiting language was proposed by the

11  defendant in *Dropcam* and was expressly rejected by Judge Tigar.   (*See* Ex. I at

12  5:2-12.)

13    The "social signature" by itself is not "indicative of a type of activity."   It is

14  simply a compilation of information related to one or more sensors.   Indeed, the

15  comparison of the detected social signature and the stored social templates may

16  suggest that there is no activity.  (*See, e.g.,* Ex. C ('523 patent) at claim 15 ("sensor

17  set further comprises an input device which the user uses to input data, and the

18  processor detects a status of the communication device according to use or ***non-***

19  ***use*** of the input device") (emphasis added).)   For example, the comparison of the

20  detected social signature and the stored social templates may simply suggest a map

21  location, the availability of a user, an unusually high heart rate, that a device is not

22  being used, that a device is outside, or that a room surrounding the communication

23  device is empty.   These examples suggest, at best, a status, but none are necessarily

24  indicative of an "activity."   (*See, e.g.*, Ex. A ('522 patent) at 9:59-65; 10:59-65;

25  11:66-12:2; 12:48-13:21; 13:46-58.)

26    Based on the foregoing, the intrinsic evidence supports the construction of

27  the term "social signature" as "raw or processed data and/or other information

28  based on sensors."   e.Digital further respectfully requests, based on the foregoing,

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-8-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 15-cv-00056-BEN-DHB

1    that ArcSoft's proposed construction be rejected.

2        **B.        "social template"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "parameters and/or information for analysis of social signatures" | "data structure storing a social signature and a social hierarchy" |

        The term "social template" should be construed as "parameters and/or information for analysis of social signatures." The specification illustrates the function of the social template in several examples, but the primary function of the social template is for determining whether a given detected social signature is within a value range associated with a classifiable event/condition/activity/non-event/non-activity. (*See* Ex. A at claim 1 ("processor … determines which of the social signatures of the stored social templates has a greatest correspondence with the created social signature through comparison of the first and second detected sensor values and the first and second sensor value ranges of each stored social template"); *see also, e.g., id.* at Fig. 3, 18:63-19:3 ("In operation 315 [of Fig. 3], the formatted data [i.e., the detected social signature] is compared to the social templates. In operation 320, the calculating logic 150 or the remote calculating logic 275 makes an a priori classification assigning one of the social templates to the formatted data. This a priori classification is based upon a closest match between the social signature in the formatted data and the social signature or signatures associated with each social template").)

        To accomplish the comparison function, the social template contains parameters or other information with which the detected social signature can be compared. Examples of such parameters are shown in the embodiment reflected in Tables 1 and 2 of the specifications, where the parameters are reflected as "value range(s)," within which the sensor values of the detected social signature may fall. (*See* Ex. A at 15:47-16:14.) Indeed, a sensor value range is the only component of

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-9-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*        Case No. 15-cv-00056-BEN-DHB

1  the social templates required by a number of the claims (though they could, but are

2  not required to, contain more information).  (*See*, *e.g.*, Ex. A at claims 1 ("each

3  social template corresponding to a unique social signature comprising a first sensor

4  value range and a second sensor value range …"), 8, and 17; Ex. B ('514 patent) at

5  claims 1, 5, 10, 14, 21, 26, 34, 36; Ex. C ('523 patent) at claims 1 and 19; Ex. D

6  ('524 patent) at claim 1; Ex. E ('619 patent) at claims 1, 4, 19, 29; Ex. F ('618

7  patent) at claims 1, 6, 15, 22.)

8       e.Digital's proposed construction is also consistent with the plain and

9  ordinary meaning of a template.  The Merriam Webster Dictionary defines a

10  "template" in part as "a gauge, mold or pattern that functions as a guide." (*See* Ex.

11  J at 736.)   Similarly, Barron's Dictionary of Computer and Internet Terms

12  describes a "template" in part as a "pattern to be matched."  (Ex. K at 492.)

13       ArcSoft's proposed construction, is a variation of the construction agreed to

14  by the parties in the *Dropcam* case, but it omits the "one or more" modifier to

15  "social signature" used in that agreed-upon construction.  (*See* Ex. I at 12:14-16.)

16  By using the singular "a," rather than the "one or more" wording in the *Dropcam*

17  construction, ArcSoft's proposed construction wrongly suggests that each social

18  template can correspond with only one social signature or social hierarchy.  This is

19  incorrect.   Each stored social template may be associated with multiple social

20  signatures and/or social hierarchies.  (*See*, *e.g.*, Ex. A at 17:39-43 ("each social

21  template could be associated with more than one set of social signatures"); 18:67-

22  19:10 ("the social signature ***or social signatures*** associated with each social

23  template") (emphasis added).)

24       Based on the foregoing, e.Digital respectfully requests that the term "social

25  template" be construed as "parameters and/or information for analysis of social

26  signatures."

27  ///

28  ///

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-10-

### C.     "social hierarchy"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "an arrangement of persons, things, information and/or operations in a series of levels" | "an arrangement of persons or their representations in a series of ordered levels" |

The term "social hierarchy" should be construed as "an arrangement of persons, things, information and/or operations in a series of levels" as this is the construction that is supported by both the intrinsic and extrinsic evidence.

The specifications of the Asserted Patents explain that a "social hierarchy" can include not only persons, but also the quantity, and type of delivery, of information made available to different persons. For example, the specifications describe an "emergency" embodiment, wherein members of the various levels of the social hierarchy receive information through different operations:

> "By way of example, the social template could be designated for emergency situations, and automatically provide information to the police, fire department, family and/or friends. ***Such communication could be through text messages, emails, computer read messages sent to a voice line, and, where social networking service and/or microblog are set up, through networking service and microblog updates***. In this way, the device 100, 200 would be able to summon help in an emergency situation according to a status sensed from the various device sensors 110, 120, 130, 140."

(Ex. A at 21:4-14 (emphasis added); *see also id.* at 21:19-24, 21:28-33, 21:38-44; *see also* Ex. G ('331 patent) at claims 1, 17, and 21 (disclosing a hierarchy of "operations").) This embodiment is not limited to "persons or their representations."

A social network or microblog may be considered a "thing" rather than a "person" *per se*. In addition, the Asserted Patents do not dictate how a person, social network, emergency services, etc. must be represented in a hierarchy. For

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

1  example, emergency services may be represented in the social hierarchy as a phone

2  number; social networks may be represented in a social hierarchy as a website

3  address.   Accordingly, e.Digital proposes that "things" and "information" should

4  be included as part of the proposed construction.

5        In each of the embodiments described in the patents and in the claims,

6  different types of information are automatically made available to people or web

7  sites based on what information the user wants to make available.   The levels of

8  the hierarchy are not necessarily ordered or ranked.   What sets the hierarchy levels

9  apart, assuming there is more than one, relates more to what and/or how

10  information is provided to the various hierarchy levels and is not necessarily

11  related to importance of the members of each hierarchy level – each level is simply

12  "different."   For example, claim 1 of the '522 patent simply requires providing "to

13  at least one member of the predetermined social hierarchy **only as much**

14  **information as allowed.**" (*See* Ex. A ('522 patent) at claim 1; *see also id.* at 15:60-

15  16:13 (Table 2).)

16        As an additional example, claim of the '331 patent discloses:

17  "a) a first set of one or more operations to be performed **using a first**
   **data** for a first set of target devices within a first social level, and [¶]

18  b) a second set of one or more operations, **different from the first set**
   **of one or more operations** to be performed **using a second data** for a

19  second set of target devices within a second social level."

20

21  (Ex. G ('331 patent) at claim 1.)[4]  (Emphasis added.)  These claims are agnostic as

22  to any "order" or ranking.   Each level is just different.   In this sense, then,

23  *requiring* "ordered levels," as proposed by ArcSoft, is an unduly limiting and

24  somewhat vague construction.

25        ArcSoft has amended its original proposed construction of the term as a

26

27  ---

   [4] While the '331 patent was cited by e.Digital in the *Dropcam* case with
   respect to the issue of "social signature," it was not before the *Dropcam* Court for
   consideration on the issue of "social hierarchy."

28

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                Case No. 15-cv-00056-BEN-DHB

variation of the construction that was entered in *Dropcam*. In that case, the Court found that "social hierarchy" should be construed as "an arrangement of persons and/or operations in a series of ordered levels." (Ex. I at 7:22-23.) However, ArcSoft omits the "and/or operations" language in favor of "or their representations." There are two problems with this amended language. First, it omits "operations," which, as discussed above and in the *Dropcam* court's analysis, can constitute a component of the social hierarchy. (*See* Ex. I at 6:27-7:3.) Second, the term "their representations" is vague and confusing. Without understanding what ArcSoft means by a hierarchy composed of people's "representations," e.Digital is unable to respond at this time, but reserves the right to address this issue in its reply brief after a full review of Defendant's supporting arguments. Nevertheless, the term is likely to be confusing and uninformative for the jury and should be rejected out of hand.

Based on the foregoing, e.Digital respectfully requests that the term "social hierarchy" be construed as "an arrangement of persons, things, information and/or operations in a series of levels."

### D. "first detected sensor value"/"second detected sensor value"

| Plaintiff's Proposed Construction of "First Detected Sensor Value" | Defendant's Proposed Construction of "First Detected Sensor Value" |
|---|---|
| Plain and ordinary meaning | "one of multiple possible light measurements between a high and low value used to develop a social signature" |

| Plaintiff's Proposed Construction of "Second Detected Sensor Value" | Defendant's Proposed Construction of "Second Detected Sensor Value" |
|---|---|
| Plain and ordinary meaning | "one of multiple possible acoustic measurements between a high and low value used to develop a social signature" |

The terms "first detected sensor value" and "second detected sensor value"

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 15-cv-00056-BEN-DHB

should be accorded their plain and ordinary meaning.  Because these two terms are related and because the issues with both terms are identical, e.Digital addresses them together in this brief.

A "sensor" is merely a device that receives and responds to a signal or stimulus, such as, by way of example only, a photoelectric cell or a microphone. (*See* Ex. L at 751; Ex. J at 656.)  However, sensors are not limited to optical and acoustic sensors.  A sensor as used in the claims and specifications of the asserted patents can be nearly any type of sensor, including, without limitation, sensors that detect heart rate, ultrasound, infrared light, temperature, local network/data logging, touch screen capacitance, biometrics, communications and application use occurring on the mobile device, pressure, magnetic fields, proximity and/or any combination of such sensors.  (*Id.* at 2:5-19; *see also id.* at 2:66-3:3; 3:19-23; 3:48-60; 4:14-18; 4:65-5:2; 5:19-32; 5:60-6:3; 6:19-24; 7:4-8; 7:13-37; 7:54-65; 9:5-11:6-14:34; 15:29-42; 16:14-26; 17:51-18:18; 18:44-18:62; 19:11-20, Claims 5, 7, 9, 13-16, 18-20.)  Accordingly, the construction of "first detected sensor value" and "second detected sensor value" should not be limited to light or acoustic measurements as proposed by ArcSoft.

e.Digital anticipates that ArcSoft will argue that limitations at issue in this case specifically refer to the first detected sensor value as "comprising an amount of light," and to the second detected sensor value as "comprising a sound level." e.Digital concedes that claim 1 of the '522 patent, for example, discloses:

> "a communication device comprising a sensor set which detects sensor data comprising a first detected sensor value comprising an amount of light of the environment of the communication device from an optical sensor and a second detected sensor value comprising a sound level of the environment of the communication device from an acoustic sensor."

(Exhibit A ('522 patent), claim 1.)

In that instance, e.Digital does not dispute that the first detected sensor value

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 15-cv-00056-BEN-DHB

must be composed of a "light measurement" and the second detected sensor value must be composed of a "sound level."  However, these limitations are already within the claim itself and need not be incorporated into the construction of the broader terms "first detected sensor value" and "second detected sensor value." (*See Polycom, Inc. v. Codian Ltd.*, 2007 U.S. Dist. LEXIS 97892, *93-94 (E.D. Tex. 2007) ("many of the limitations in Polycom's construction are already listed as limitations in the surrounding claim language and do not need to be imported into the definition of the term"); *see also* Ex. I (*Dropcam* Claim Construction Order) at 9:23-26.)

This is especially important because, as noted above, the embodiments disclosed in the specification allow for all types of sensors besides an optical or acoustic sensor.  Indeed there are claims within the patent pool that are indifferent to the type of sensor utilized.  For example, claim 1 of the '331 patent teaches: "A method for transmitting data comprising: [¶] generating sensor data representing a characteristic of a user's activity."  (Ex. G ('331 patent) at claim 1; *see also* claims 4-8 (identifying a number of sensor types other than optical or acoustic), 13-19, 21 (identifying sensor types in addition to optical and acoustic sensors); 24-25 (disclosing social signatures and social templates that do not require optical or acoustic data).  In all of the claims of the '331 patent, the detected sensor values, whether they are first or second detected sensor values, can be any sensor value and are not limited to light or sound.[5]

---

[5] To the extent ArcSoft may argue that the '331 patent does not use the exact words "first" and/or "second," this is irrelevant as any of the sensor values disclosed in the claims of the '331 patent could be "first" or "second."  Moreover, the '983 patent, which did not issue until November 2, 2015, and thus could not be cited in the Parties' Joint Hearing Statement filed October 26, 2015, does use the terms "first detected sensor value" and "second detected sensor value" and, like the '331 patent is indifferent to the types of sensors used.  (*See* Exhibit H at claims 20 (requiring "at least one sensor" to generate the first and second detected sensor

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                     Case No. 15-cv-00056-BEN-DHB

ArcSoft's proposed inclusion of the language "one of multiple possible … measurements between a high and low value used to develop a social signature" is also unduly limiting.  Nothing in the patents requires a sensor capable of multiple possible measurements or that such measurements be between a high and low value.  For example, the specifications discuss using biometric sensors.  (Ex. A ('522 patent) at 10:28-38.)  Sensor data representing, by way of example, a thumbprint would not necessarily be between a "high" value and a "low" value.  Likewise, communication status and/or usage data, which is discussed at length in the specifications, might not be represented as a "measurement" between a "high" and "low" value.  (*See*, *e.g.*, *id.* at 10:47-55, 59-67.)  The data may simply be, *e.g.*, "available."   Similarly, map data incorporated in a social signature would not necessarily be composed of data between a "high" and "low" value, but rather on a set of coordinates within a horizontal range, which cannot be set neatly between a "high" and "low" value.

Moreover, ArcSoft's proposed construction assumes without support that sensor data must have a raw numerical value that can even be placed between a low and high value.  (*See*, *e.g.*, *id.* at 13:36-45 ("the mapping processor can compare the sensed location with a map stored in the mobile device 100 or retrieved from a query to an internet service such as MapQuest or Google maps, and determine the location as being ***a restaurant, store, office or other like location*** according to such publicly available information").)  The Parties do not dispute that sensor data can be processed.  (*See*, *e.g.*, *id.* at Fig. 1 (depicting, *e.g.*, an optical processor coupled with the optical sensor).)  Thus, a "detected sensor value" from an optical sensor could simply be represented as "bright," "dark," or

values "comprising a first/second descriptive characteristic of the user's activity," without specifying the *type* of sensor or the specific category of measurement included).)

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

1    "dim" rather than just raw optical data.  (*See*, *e.g.*, *id.* at 19:19-20 ("the optical

2    sensor 130 determines that the movie theater lights are bright").)

3         Finally, even the Parties' agreed-upon construction of "sensor value range,"

4    against which the detected sensor values would ultimately be compared, does not

5    require "high" or "low" values, but simply "a range of measurements between two

6    values."   Using the map data embodiment as an example, the "range of

7    measurements between two values" could be "between Front Street and India

8    Street."   Those street boundaries are neither "high" nor "low" values.

9    Accordingly, it would not be necessary for the *detected* sensor value to be situated

10   between a "high" and "low" value.   Similarly, using the optical sensor as an

11   example, the sensor value range could be between points on a color scale (*e.g.*, a

12   CMYK model).   Again, such points would not necessarily be "high" or "low"

13   values and, therefore, the *detected* sensor value need not fit within a vertically

14   arranged series of sensor parameters. ArcSoft's proposed construction is therefore

15   inconsistent with the construction of "sensor value range."

16        Finally, to the extent ArcSoft is attempting to bootstrap the concept of a

17   "sensor value range" into its construction of "detected sensor value," this limitation

18   (to be separately construed by the court) is already contained in the claim itself.

19   (*See Polycom, Inc. v. Codian Ltd.*, *supra*, 2007 U.S. Dist. LEXIS 97892, *93-94;

20   *see also* Ex. I (*Dropcam* Claim Construction Order) at 9:23-26.)

21        In light of the foregoing, ArcSoft's proposed constructions of "first detected

22   sensor value" and "second detected sensor value" are unduly limiting and e.Digital

23   respectfully submits that the terms have plain and ordinary meanings and need not

24   be construed.

25   **VI.    CONCLUSION**

26        Based on the foregoing, e.Digital respectfully requests that ArcSoft's

27   proposed constructions be rejected and that the Court adopt e.Digital's proposed

28   constructions as set forth above.

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-17-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*        Case No. 15-cv-00056-BEN-DHB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted.

**HANDAL & ASSOCIATES**

Dated:  December 7, 2015        By:     /s/ Gabriel G. Hedrick
                                        Anton N. Handal
                                        Gabriel G. Hedrick
                                        Lauren G. Kane
                                        Attorneys for Plaintiff
                                        e.Digital Corporation

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-18-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*        Case No. 15-cv-00056-BEN-DHB

1

## CERTIFICATE OF SERVICE

2      The undersigned hereby certifies that a true and correct copy of the

3  foregoing document has been served on this date to all current and/or opposing

4  counsel of record, if any to date, who are deemed to have consented to electronic

5  service via the Court's CM/ECF system.   Any other counsel of record will be

6  served by electronic mail, facsimile and/or overnight delivery.

7      I declare under penalty of perjury of the laws of the United States that the

8  foregoing is true and correct.   Executed this 7th day of December, 2015 at San

9  Diego, California.

10

11                                      /s/ Gabriel G. Hedrick

12                                      Gabriel G. Hedrick

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-19-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 15-cv-00056-BEN-DHB