1 ANTON HANDAL (Bar No. 113812)
anh@handal-law.com
2 GABRIEL HEDRICK (Bar No. 220649)
ghedrick@handal-law.com
3 LAUREN KANE (Bar No. 286212)
lkane@handal-law.com
4
5 HANDAL & ASSOCIATES
750 B Street, Suite 2510
6 San Diego, California 92101
Tel: 619.544.6400
7 Fax: 619.696.0323
8 Attorneys for Plaintiff
e.Digital Corporation
9
10 Attorneys for Plaintiff
11 E.DIGITAL CORPORATION

12

## UNITED STATES DISTRICT COURT

13

## SOUTHERN DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15  E.DIGITAL CORPORATION, | Case No. 3:15-cv-00056-BEN-DHB |
| 16      Plaintiff, | |
| 17      v. | **PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF (PATENT L.R. 4.4.b.)** |
| 18  ARCSOFT, INC., DBA AS CLOSELI AND AS SIMPLICAM, | Judge: Hon. Judge Roger T. Benitez |
| 19      Defendant. | Ctrm: 5A (5th Floor – Schwartz) |
| 20 | Hearing: January 21, 2016 |
| | Time: 9:30 a.m. |

21

22

23

24

25

26

27

28

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-i-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*       Case No. 15-cv-00056-BEN-DHB

# TABLE OF CONTENTS

I. COLLATERAL ESTOPPEL DOES NOT APPLY..........................................1

    A. LEGAL STANDARD................................................................1

    B. ARCSOFT FAILS TO SHOW THAT THE DROPCAM CLAIM
       CONSTRUCTION ORDER IS A FINAL JUDGMENT FOR
       PURPOSES OF COLLATERAL ESTOPPEL ....................................1

    C. THE ISSUES BEFORE THE DROPCAM COURT AND THIS
       COURT ARE NOT IDENTICAL .......................................................3

II. ARCSOFT'S CONSTRUCTIONS OF "FIRST DETECTED
    SENSOR VALUE" AND "SECOND DETECTED SENSOR
    VALUE" SHOULD BE REJECTED ............................................4

III. ARCSOFT'S CONSTRUCTION OF "SOCIAL SIGNATURE"
    SHOULD BE REJECTED .............................................................6

IV. ARCSOFT'S CONSTRUCTION OF "SOCIAL HIERARCHY"
    SHOULD BE REJECTED. ............................................................8

V. ARCSOFT'S CONSTRUCTION OF "SOCIAL TEMPLATE"
    SHOULD BE REJECTED .............................................................9

VI. CONCLUSION ............................................................................10

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*    Case No. 15-cv-00056-BEN-DHB

# TABLE OF AUTHORITIES

## CASES

*Altera Corp. v. PACT XPP Techs., AG*, 2015 U.S. Dist. LEXIS 111222, *41-42 (N.D. Cal., Aug. 21, 2015) ....................3

*B-50.com, LLC v. InfoSync Servs, LLC*, No. 3:10-cv-1994-D, 2012 U.S. Dist. LEXIS 148016, 2012 WL 4866508, at *3-4 (N.D. Tex. Oct. 15, 2012)..............3

*Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518 (9th Cir. 1985) .......................1

*e.Digital v. Futurewei Techs, Inc.*, 772 F.3d 723, 726 (Fed. Cir. 2014) ..................3

*Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d 229, 234 (9th Cir.1989) ......................2

*Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980) ..............................................1

*Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 477 (3d Cir. 1977).......................4

*Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) ..........................1

*In re Freeman*, 30 F.3d 1459, 1467 (Fed. Cir. 1994) .............................................2

*Kendall v. Visa USA, Inc.,* 518 F.3d 1042, 1050 (9th Cir. 2008) .............................1

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp. 2d 464, 468-70 (W.D. Va. 2001)......................................................4

*Polycom, Inc. v. Codian Ltd.*, 2007 U.S. Dist. LEXIS 97892, *93-94 (E.D. Tex. 2007)......................................................7

*Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001) ...................1

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, Civ. No. 08-309, 2009 WL 4928029, at *16-17 & n. 1 (D.Del. 2009) .............................................4

*Rambus, Inc. v. Hynix Semiconductor, Inc.*, 569 F. Supp. 2d 946, 966 (N.D. Cal., July 10, 2008) ..................................................2, 3

*Smith & Nephew, Inc. v. Arthrex, Inc.*, No. CV 04-29-MO, 2007 U.S. Dist. LEXIS 27499, 2007 WL 1114229, at *3-4 (D. Or. Apr. 12, 2007) ...............................3

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct 831, 839-40, 190 L. Ed. 2d 719 (2015) ........................................................3

*TM Patents, L.P. v. Int'l Bus. Mach. Corp.*, 72 F. Supp. 2d 370 (S.D.N.Y. 1999)...3

*United States Internal Revenue Serv. V. Palmer (In re Palmer),* 207 F.3d 566, 568 (9th Cir. 2000) ............................................1

## RULES

Local Patent Rule 4.4.b ............................................................................................1

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*    Case No. 15-cv-00056-BEN-DHB

**HANDAL & ASSOCIATES**
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

Pursuant to Local Patent Rule 4.4.b. and the Court's June 29, 2015 Scheduling Order ("Scheduling Order") (Doc. No. 32), Plaintiff e.Digital Corporation ("Plaintiff" or "e.Digital") submits the following Responsive Claim Construction Brief in the above-entitled matter.

# I.  COLLATERAL ESTOPPEL DOES NOT APPLY

ArcSoft argues that the collateral estoppel doctrine should be applied to three terms that were construed by the Court in *e.Digital v. Dropcam*, Northern District of California, Case No. 3:14-cv-04922-JST ("the Dropcam case" or "*Dropcam*"). Application of the collateral estoppel doctrine is inappropriate in this case since the law does not recognize an application of the doctrine when there has not been a final judgment on the merits or where the issues are not identical.

## A.  LEGAL STANDARD

Under Ninth Circuit law, collateral estoppel applies only if all of the following conditions are met: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. *Hydranautics v. FilmTec Corp.,* 204 F.3d 880, 885 (9th Cir. 2000). ArcSoft has the burden to show that collateral estoppel should apply. *Id.*; *see also Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001). If there is any doubt that the issues are identical, collateral estoppel cannot be applied. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir. 1985); *see also Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980).

## B.  ARCSOFT FAILS TO SHOW THAT THE DROPCAM CLAIM CONSTRUCTION ORDER IS A FINAL JUDGMENT FOR PURPOSES OF COLLATERAL ESTOPPEL

Without a final determination on the merits, collateral estoppel cannot be applied. The claim construction order in *Dropcam*, entered on November 30, 2015, is not a final judgment. Indeed, under Rule 54(b) of the Federal Rules of

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*     Case No. 15-cv-00056-BEN-DHB

Civil Procedure, a Court could amend its claim constructions at any time before entry of final judgment. As a Court in the Northern District of California noted, "the prevailing notion among the district courts and the [Federal Circuit] court is that it is better to get a claim construction right than it is to get a claim construction settled." *Rambus, Inc. v. Hynix Semiconductor, Inc.*, 569 F. Supp. 2d 946, 966 (N.D. Cal., July 10, 2008). To this end, "additional litigation can refine and sharpen the courts' understanding of an invention and … a second court should not defer to a prior court's claim construction without questioning its accuracy." *Id.*

In *Rambus*, several of the claim terms at issue had been construed in an earlier *Markman* ruling in a separate case between the same parties. *Id.* at 963. The Court found that the "[t]here has not yet been a final judgment in the earlier proceedings, preventing Hynix from obtaining appellate review of the court's claim construction." *Id.* at 968. In refusing to apply collateral estoppel, the Court distinguished cases where Courts applied collateral estoppel to claim construction orders in earlier cases that were ultimately settled before judgment. *Id.* The Court concluded, "Because Hynix has not yet been able to exercise its right to appeal this court's prior claim construction, it cannot be precluded from continuing to litigate the scope of Rambus's patent claims." *Id.* *Rambus* therefore stands for the proposition that, where a case has not reached a final judgment or otherwise been fully settled, collateral estoppel cannot apply.

ArcSoft's authority is unavailing. ArcSoft relies primarily on a 17-year old out-of-circuit case, *TM Patents, L.P. v. Int'l Bus. Mach. Corp.*, 72 F. Supp. 2d 370 (S.D.N.Y. 1999) and *e.Digital v. Futurewei Techs, Inc.*, 772 F.3d 723, 726 (Fed. Cir. 2014). In each of those cases, the parties settled the earlier case, effectively rending the earlier claim construction orders final and unappealable. Here, the *Dropcam* case is still pending. No judgment has been entered and no dismissal has occurred as a result of settlement. Notably, in *Altera Corp. v. PACT XPP Techs., AG*, 2015 U.S. Dist. LEXIS 111222, *41-42 (N.D. Cal., Aug. 21, 2015), Hon.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 15-cv-00056-BEN-DHB

Judge Donato addressed and rejected, albeit in *dicta*, the argument ArcSoft makes here, referring to the soundness of *TM Patents, L.P.*, relied on by ArcSoft, as "doubtful."

Judge Tigar's claim construction order in the ongoing *Dropcam* case is still subject to being "refined and sharpened" and not yet subject to appeal. Accordingly, ArcSoft cannot demonstrate that the first proceeding ended with a judgment on the merits. Based on the foregoing, e.Digital respectfully submits that the collateral estoppel doctrine does not apply in this case.

**C.    THE ISSUES BEFORE THE DROPCAM COURT AND THIS COURT ARE NOT IDENTICAL**

Several issues presented here were *not* litigated before Judge Tigar, including patent claims from the '983 patent. The '983 patent was not granted until three months after the *Markman* hearing in *Dropcam* and just after the parties submitted their Joint Hearing Statement in this matter. (Doc. No. 46 ("Opening Brief") at 7, fn. 3.) With respect to the term "social signature," e.Digital can now point to claim 1 of the newly issued '983 patent as evidence that the term contemplates a minimum of one sensor, which supports a different claim construction than the one entered in the *Dropcam* case, where the term was construed as a "combination" of data. (*Id.* at 7.) Similarly, e.Digital points to claim 1 of the '331 patent, which was not before Judge Tigar on the issue of "social hierarchy," as evidence that the levels of the social hierarchy need not be "ordered," but merely "different." (*Id.* at 12.)

Courts have found that collateral estoppel does not apply where subsequent "reexamination history needs to be considered in connection with construing the claims." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, Civ. No. 08-309, 2009 WL 4928029, at *16-17 & n. 1 (D.Del. 2009) *citing, Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 477 (3d Cir. 1977). Similarly, the Court should likewise consider claims from subsequently issued related patents. Like

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*        Case No. 15-cv-00056-BEN-DHB

subsequent prosecution history, the cited evidence raises different issues than those before Judge Tigar in *Dropcam*.

To be clear, e.Digital does not believe Judge Tigar's claim constructions, if adopted here, would in any way be case dispositive. However, e.Digital's primary concern is preserving the scope of all of the claims in the patent family, including those that were granted after this case was filed.

As demonstrated in the Opening Brief and below, the '331 patent and '983 patent (the latter of which was issued *after* briefing and oral argument in the *Dropcam* case), both support the constructions offered by e.Digital.

## II. ARCSOFT'S CONSTRUCTIONS OF "FIRST DETECTED SENSOR VALUE" AND "SECOND DETECTED SENSOR VALUE" SHOULD BE REJECTED

e.Digital continues to maintain that the terms "first detected sensor value" and "second detected sensor value" should be accorded their plain and ordinary meaning. ArcSoft's attempts to use e.Digital's agreement to Judge Tigar's construction of "social template" against it. (Doc. 47 ("ArcSoft Opening Brief") at 12:9-26.) However, ArcSoft's interpretation of the agreed upon construction of "social template" is unduly limited.

Contrary to ArcSoft's position, construction of the term "range of measurements between two values" does not require "high" and "low" values as pointed out in e.Digital's Opening Brief. In simple terms, the two values referred to in the claims need not be numerical (as the use of "high" and "low" implies). For example, because an acoustic sensor, as contemplated in the specification, is capable of capturing any characteristic of sound, a sound level could be represented by a timbral quality as opposed to simply a decibel level. (*See* e.Digital Ex. A at 11:43-50 ("In one embodiment, multiple acoustic sensors are used to filter noise from relevant acoustic signals…Examples of the acoustic sensor 140 include a microphone or like mechanism which detects acoustics and sounds"); 10:28-33 ("it is understood that other biometrics could be used, such as

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-4-

…***voice*** … and other mechanism[s] by which a particular user is identified based upon that user's ***characteristics***") (emphasis added).)

That the first and second detected sensor values need not be represented as "measurements between a high and low value" is further evident from the non-controversial fact that sensor data can be processed before it is assembled into a social signature. (*See, e.g., id.* at 14:59-61; 14:65-66; 18:47-50; *see also* Figs. 1-3).) Accordingly, the specification contemplates that the raw sensor data could be processed into non-numerical values. Acoustic sensor data values therefore could be "soft," "loud," "baritone," "tenor," "sharp," etc. (*See, e.g., id.* at 21("the device sensors … could detect a ***sharp*** audio sound")).) Optical sensor data values could be "dark," "bright," "red," "blue," "movement," etc. (*Id.* at 11:55-56 ("the optical sensor 130 can be a camera (still ***or video***) as used in mobile phones") (emphasis added); 19:19-20 ("the optical sensor 130 determines that the movie theater lights are ***bright***") (emphasis added).)

These values contemplated by the specification are not "concrete measurements of light and sound detected and sent by the sensor" expressed only in terms of decibels or lumens, as argued by ArcSoft (ArcSoft Opening Brief at 13:1-2), but are rather characteristics of light and sound such as tone, melody, color, and contrast, that can be constructed when the data is processed. While these examples of sensor values may *originate* from measured numerical values, the patents do not require that they be expressed as such after processing and before comparison with the social template. ArcSoft's attempt to confine detected sensor values to "between a high and low value" is therefore unnecessarily limiting and would only cause confusion for the jury.

Finally, as predicted, ArcSoft seeks to limit a "detected sensor value" to "light" and/or "acoustic" data based on certain claims that are asserted in this case, while ignoring other claims that are agnostic to any specific types of sensors. (*See* ArcSoft Opening Brief at 12:27-13:2; e.Digital Opening Brief at 14:18-15:28

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 15-cv-00056-BEN-DHB

(citing as examples various claims of the unasserted '331 patent).) However, as noted in e.Digital's Opening Brief, limitations already within a claim itself should not be incorporated into the construction of the broader terms "first detected sensor value" and "second detected sensor value."

In light of the foregoing, ArcSoft's proposed constructions of "first detected sensor value" and "second detected sensor value" are unduly limiting and e.Digital respectfully submits that the terms have plain and ordinary meanings and need not be construed.

## III. ARCSOFT'S CONSTRUCTION OF "SOCIAL SIGNATURE" SHOULD BE REJECTED

e.Digital respectfully requests that the term "social signature" be construed as "data and/or other information based on sensors." In arguing that "and/or other information based on sensors" should be omitted from the Court's construction, ArcSoft cherry picks from the claims and specification and unconvincingly attempts to discount Judge Tigar's construction.

First, ArcSoft quotes from claim 1 of the '522 patent, but conspicuously omits any discussion of the portion of that claim that actually discloses the social signature. (ArcSoft Opening Brief at 15:17-25.) Specifically, claim 1 teaches: "a server comprising a processor which receives the sensor data from the communication device, creates a detected social signature from the received sensor data." (e.Digital Ex. A at claim 1.) This claim does not teach that the social signature is composed only of data received directly from the sensors themselves. To this end, it appears that ArcSoft is arguing that the social signature can only be comprised of the raw sensor data, while conveniently ignoring the fact that, as pointed out in the previous section, processors can be coupled to the sensors.

More importantly, the specification is clear that the social signature is not limited to raw sensor data, but can be comprised of information based on the sensor data as illustrated by the "map location" embodiment in the specification.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*     Case No. 15-cv-00056-BEN-DHB

(Ex. A at 13:31-45 (disclosing the comparison of sensor data to, *e.g.*, information contained in a user's address book or Google Maps).) Indeed, claim 2 of the '522 patent, makes clear that this non-sensor data can be included in the "social signature."

In attempting to criticize Judge Tigar's construction, ArcSoft offers the following explanation, which proves e.Digital's point:

> "***The 'map data' referenced in the specification***, with which the 'location information retrieved from a sensor' is compared by the processor, ***could not have also come from the sensor***."

(ArcSoft Opening Brief at 16:18-23.) (Emphasis added.)

The specification discloses other examples of social signature information that is "based on" sensor data, but is not necessarily comprised of sensor data. For example, the specification discusses using biometrics such as fingerprint, voice and/or facial recognition. (e.Digital Ex. A at 10:4-38.) This data is not necessarily comprised of the sensor data itself, but can be a result of an analysis of combinations of data "based upon" multiple sensors and, as noted above, data stored in memory or on the internet. (*Id.*) The output of this analysis is not necessarily "processed sensor data," but rather other information that results from processing the sensor data.

Finally, with respect to the phrase "indicative of a type of activity," again, e.Digital does not dispute that the social signature can be *used* to determine a type of activity (or non-activity) of a user. The undisputed point, however, is that "social signature" data by itself is not necessarily "indicative of a type of activity" until it is compared to the social templates. ArcSoft's citations to the specification support e.Digital on this point. For example, ArcSoft points to Fig. 3 of the '522 patent, which shows that, in that specific embodiment, no classification is made until after the social signature is compared to the various social signatures of the social templates. (e.Digital Ex. A at Fig. 3 (at item Nos. 315 and 320).)

The "mother-and-baby-sleeping" embodiment provides another example.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*     Case No. 15-cv-00056-BEN-DHB

The specification describes the social signature in this hypothetical:

> In this example, … the location sensor **110** senses the location is at 39.78° N, 104.88° W, the inertial sensor **120** senses no acceleration, the optical sensor **130** senses a light value of 223 1m, and the acoustic sensor **140** senses a sound level of -63 db.

(*Id.* at 16:14-18.)  Here the social signature is just a compilation of data.  The only thing it is indicative of is the specific data within the social signature.  In this embodiment, the social signature does not indicate an activity until it is compared to the sensor value ranges in Table 1.  (*Id.* at 15:48-58; 16:18-23.)

Based on the foregoing, the intrinsic evidence supports the construction of the term "social signature" as "data and/or other information based on sensors." Accordingly, e.Digital respectfully requests that ArcSoft's proposed construction be rejected.

## IV. ARCSOFT'S CONSTRUCTION OF "SOCIAL HIERARCHY" SHOULD BE REJECTED.

The term "social hierarchy" should be construed as "an arrangement of persons, things, information and/or operations in a series of levels" as this is the construction that is supported by both the intrinsic and extrinsic evidence.  Most of e.Digital's arguments in support of this construction are incorporated into its Opening Brief and need not be repeated here.  However, ArcSoft's proposed substitution of "or their representations" in place of "and/or operations" must be addressed.

In its Opening Brief, e.Digital points out that the unasserted '331 patent, explicitly discloses a hierarchy of "operations."  (*See* e.Digital Ex. G ('331 patent) at claims 1, 17, and 21.)  Specifically, claim 1 of the '331 patent provides:

> wherein ***the social hierarchy comprises differing levels of operations to be performed*** …, including at least:
> a) a first set of one or more operations to be performed using a first data for a first set of target devices within a first social level, and
> b) a second set of one or more operations, ***different from the first set of one of more operations to be performed*** using a second data for

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

a second set of target devices within a second social level;

(e.Digital Ex. G at claim 1.)  (Emphasis added.)

An "operation" is not "confusing" as suggested by ArcSoft.  It is simply an action to be taken by a processor.  It could be an email, text message, or social network update as disclosed in the "emergency" embodiment, but claim 1 of the '331 patent is not limited to emergency situations or to sending information to a person.  The operation could be, for example, to turn on a light in the user's home or to lock the user's car door.  These examples of operations are not limited to "persons or their representations."  ArcSoft's proposed use of "persons or their representations" does not clarify the inventor's intended definition of a "social hierarchy."  It only confuses matters further and would exclude the possible operations contemplated by the '331 patent.

Finally, portion of claim 1 of the '331 patent further demonstrates that a social hierarchy need not be graded.  Each level can simply be "different."  Based on the foregoing, e.Digital respectfully requests that the term "social hierarchy" be construed as "an arrangement of persons, things, information and/or operations in a series of levels."

## V. ARCSOFT'S CONSTRUCTION OF "SOCIAL TEMPLATE" SHOULD BE REJECTED

The term "social template" should be construed as "parameters and/or information for analysis of social signatures" for the reasons set forth in e.Digital's Opening Brief.  A party is not bound by an offer of compromise if the opposing party refused to agree to that compromise.  e.Digital offered the same exact construction it agreed to with Dropcam.  ArcSoft declined.  It cannot now complain that e.Digital continues to advocate for what it believes is the most accurate construction.  While it is e.Digital's position that "data structure associated with a social hierarchy and one or more social signatures," which is what was agreed to with Dropcam, is technically correct, e.Digital's proposed construction here is more instructive.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 15-cv-00056-BEN-DHB

1    ArcSoft oddly argues that the claim limitation "each social template

2  corresponding to a unique social signature" means that each social template can be

3  associated with only one social signature. (ArcSoft Opening Brief at 22:26-23:9.)

4  This position defies logic. The limitation does not imply that a social template can

5  have only one unique social signature. "Unique" does not mean "single" or

6  "solitary." A social template could have multiple unique social signatures. The

7  limitation simply means that the social signature is unique when compared to other

8  social signatures, not that it is unique to the social template. Just to illustrate the

9  logical fallacy of ArcSoft's argument, a parent can have a child. That child, like

10  all children, is unique. However, this does not mean that a parent is limited to just

11  one unique child.

12    ArcSoft wrongly argues that its construction is "consistent with the goal of

13  the invention," but completely ignores the portion of the specification discussing

14  the "training" embodiment wherein the patentee states, "each social template could

15  be associated with more than one set of social signatures." (e.Digital Ex. A at

16  17:39-43.) ArcSoft's proposed construction is clearly erroneous and should be

17  rejected.

18    Finally, in arguing that a social template is "not just a set of parameters,"

19  ArcSoft concedes that a social template at least contains a set of parameters. (*See*

20  ArcSoft Opening Brief at 25:16-17.) However, nowhere are these parameters

21  reflected in ArcSoft's proposed construction.

22    Based on the foregoing, e.Digital respectfully requests that the term "social

23  template" be construed as "parameters and/or information for analysis of social

24  signatures."

25  **VI.   CONCLUSION**

26    Based on the foregoing, e.Digital respectfully requests that ArcSoft's

27  proposed constructions be rejected and that the Court adopt e.Digital's proposed

28  constructions as set forth above and in the Opening Brief.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 15-cv-00056-BEN-DHB

1    Respectfully submitted.

2    **HANDAL & ASSOCIATES**

3    Dated:  December 21, 2015    By:    /s/ Gabriel G. Hedrick

4                                          Anton N. Handal
                                           Gabriel G. Hedrick
5                                          Lauren G. Kane
                                           Attorneys for Plaintiff
6                                          e.Digital Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 15-cv-00056-BEN-DHB

1

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on this date to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed this 21st day of December, 2015 at San Diego, California.


/s/ Gabriel G. Hedrick

Gabriel G. Hedrick

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-12-